# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARCUS WAYNE COVINGTON,   )
                                  )
       Petitioner,        )
                                  )    **1:8CR495-1**
       v.            )    **1:12CV322**
                                  )
UNITED STATES OF AMERICA,   )
                                  )
       Respondent.     )

## RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Petitioner, Marcus Wayne Covington, a federal prisoner, filed a Motion and Memorandum (Docket Entries 49 and 50)[*] to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Respondent has filed a Response. (Docket Entry 55.) Petitioner, in turn, filed a Reply (Docket Entry 61) and an Amended Reply (Docket Entry 62). This matter is now ready for a ruling. *See* Rule 8, Rules Governing Section 2255 Proceedings.

### Procedural Background

Petitioner was the subject of a three count indictment in December of 2008. (Docket Entry 1.) In Count One Petitioner was indicted for possession with intent to distribute approximately 2 grams of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(c). (*Id.*) In Count Two Petitioner was charged with possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(a)(A)(i). (*Id.*) Count Three charged Petitioner with possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§

---

[*] This and all further cites to the record are to the criminal case.

922(g)(1) and 924(a)(2). (*Id.*) After a three-day jury trial, Petitioner was found guilty on all counts. (Docket Entry 24, Minute Entries 5/11/09 through 5/13/09.) He was sentenced to 144 months of imprisonment. (Docket Entry 27; 3/5/10 Minute Entry.) Petitioner appealed and the Fourth Circuit Court of Appeals affirmed his conviction. *United States v. Covington*, 420 Fed. App'x 274 (4th Cir. 2011). Petitioner then filed the instant Motion.

<u>**Factual Background**</u>

**A. Testimony at Trial**

The evidence presented at trial supported the following: On October 16, 2008, Petitioner was arrested by officers with the Durham Police Department after he was observed discarding a plastic bag of heroin and found to be in possession of a handgun. (Docket Entry 41 at 16-20.) At approximately 6:45 p.m., investigators with the Durham Police Department's H.E.A.T. (High Enforcement Abatement Team) Unit were conducting directed patrol in the high-crime area of Cornwallis Road Apartments. (*Id.* at 13-14.) As Officer Shawn Bromell drove his patrol vehicle into the parking lot of 125 East Cornwallis Road, he observed Petitioner drop an object to the ground. (*Id.* at 12-17.) Officer Bromell exited his patrol vehicle and walked over to the object that Petitioner had discarded. (*Id.* at 17.) Officer Bromell noted that the object was a plastic bag containing a brown substance, along with some rice. (*Id.*) Officer Bromell did not pick up the object at that time, instead he approached Petitioner, who was still holding marijuana in his right hand. (*Id.*) Officer Bromell patted Petitioner down and located a loaded handgun in his waistband. (*Id.* at 18,

20, 111.) Officer Bromell also observed loose rice inside Petitioner's left back-pocket and on the ground near the object.[1] (*Id.* at 17, 20.)

As Officer Bromell was engaged with Petitioner, Officer Reese Carson arrived. (*Id.* at 19, 103-107.) Officer Bromell then retrieved the object that Petitioner had thrown to the ground. (*Id.* at 19.) Upon inspection, Officer Bromell determined that the object was a plastic bag containing multiple smaller plastic bags, which contained a brown substance, along with loose rice. (*Id.*) The substance field-tested positive for heroin. (*Id.* at 10-11, 19.) At trial, the parties stipulated to .5 grams of heroin. (*Id.* at 10.)

Petitioner was arrested and transported to the Durham police headquarters. In the presence of Officers Bromell and Carson, Petitioner waived his *Miranda* rights, in writing, and provided a written statement in his own words. (*Id.* at 27-32, 131.) Petitioner's handwritten and signed statement read, "I had the gun for protection – for my protection. I had the drugs so I can pay bills." (*Id.* at 99.) Officer Carson also asked Petitioner questions from a "gun questionnaire." (*Id.* at 132-33.) In response to a question, Petitioner responded, "I got the gun from a crack head for a hundred dollars that lived in Sanford, North Carolina. His name is Sed (sic)." (*Id.*) According to Officer Carson, Petitioner wrote his initials after each response. (*Id.*)

After the Government presented its evidence, Petitioner testified that on October 16, 2008, he witnessed a drug deal take place at the Cornwallis Road Apartments. (Docket

---

[1] At trial, the parties stipulated that, prior to the offenses alleged in the indictment, Petitioner had previously been convicted of a felony, and had not had his firearm rights restored. (Docket Entry 41 at 10-11.) The parties stipulated further that the firearm was functional and had traveled in or affected interstate or foreign commerce. (*Id.* at 163.)

Entry 43 at 17-96, 21-22.) Petitioner told the jury that the gun and drugs were not his. (*Id.* at 23, 28.) Petitioner implied that Officer Bromell falsely testified that he had witnessed Petitioner discard the heroin and falsely testified that he had removed the gun from Petitioner's waistband. (*Id.* at 23-24, 59-61.) Petitioner testified that Officer Bromell observed the handgun on the ground and falsely claimed that he recovered it from Petitioner. (*Id.*) Petitioner acknowledged that he did sign the *Miranda* waiver and did write the statement, "I had the gun for my protection [and] I had the drugs so I could pay my bills[.]" (*Id.* at 66.) Petitioner further acknowledged that he told Officer Carson that he got the gun from a "crackhead" in Sanford named "Sed." (*Id.* at 66-67).

According to Petitioner, he lied to the officers about possessing the gun and drugs and fabricated the story that he bought the gun from a man in Sanford. (*Id.*) Petitioner said that he made these false and incriminating admissions because it was his understanding that Officer Carson would "talk to the DA to get [him] out of the situation and get me a lower bond." (*Id.* at 67.) Petitioner further testified that he was shot in the right arm at close range with a 12-gauge shotgun on October 14, 2005. (Docket Entry 41 at 170.) Petitioner explained the physical limitations that he still experienced as a result of this injury. (Docket Entry 43 at 17-18.) According to Petitioner, he ceased all illegal activities after this traumatic experience. (*Id.* at 41.) Petitioner testified, "no more guns, no more drugs, none of that." (*Id.*) After hearing argument from both parties, the Court, in its discretion, denied Petitioner's request to show to the jury the injury to his right arm as a result of the shooting. (*Id.* at 9-16.)

On cross-examination Petitioner acknowledged prior convictions for robbery with a dangerous weapon, common law robbery, possession of a firearm by a convicted felon, and possession of a controlled substance in jail. (*Id.* at 28-30, 37-38.) As to the controlled substance in jail conviction, Petitioner claimed that he pleaded guilty to the charge despite the fact that the narcotics were found in clothing that did not belong to him but that he was wrongly given and happened to be wearing. (*Id.* at 39-40.) Despite his pronouncement that he ceased all illegal activities after being shot on October 14, 2005, Petitioner admitted that in 2007, he pleaded guilty to maintaining a vehicle/dwelling (for controlled substances); an offense that occurred on July 21, 2007. (*Id.* 41-42.) Petitioner further admitted that he often smoked marijuana because of the pain in his arm. (*Id.* at 47-48.)

## B. The State Court Warrants

In cross-examining Officer Bromell, an evidentiary issue arose and was resolved by the Court outside of the presence of the jury. Specifically, defense counsel asked the Officer if he filled out any warrants for Petitioner's arrest. (Docket Entry 41 at 49.) Officer Bromell indicated that he had filled out the "top portion[s]" of warrants and the magistrate had filled out "some of the dates and stuff." (*Id.*) Counsel presented Officer Bromell with a state warrant relating to Petitioner's possession of a firearm indicating that the date of the firearm offense was October 15, 2008. (*Id.* at 50-51.) Counsel then asked Officer Bromell whether "if the magistrate wrote a date, it's based on the information that you gave him, right?" (*Id.* at 51.)

5

The Court excused the jury and permitted counsel to *voir dire* the Officer. (*Id.* at 53.) Officer Bromell testified that he provided the magistrate "the information except for the date of the offense," that he "advised it was on this particular date," and that at the time he had "swore to the testimony [he] gave to the magistrate." (*Id.* at 54.) The Court then asked Officer Bromell a number of questions and in response he described the process by which he swore out warrants before a magistrate. Specifically, Durham Officers would approach the state magistrate, be placed under oath, and then provide the information to the magistrate. (*Id.* at 56-57.) The magistrate would type the warrant and sign it, then the warrant was handed back to the officer for a signature. (*Id.*) Counsel continued to *voir dire* Officer Bromell—still outside of the presence of the jury—who testified that, when the warrants were handed back to him from the magistrate, he did not review them for accuracy before signing them. (*Id.* at 65-67.)

The Government then provided Officer Bromell with all three of Petitioner's state warrants—second degree trespass (offense date 10/16/08), carrying a concealed firearm by a convicted felon (offense date 10/15/08), and possession with intent to manufacture, sell, and deliver heroin (offense date 10/16/08). (*Id.* at 69-70.) Officer Bromell testified that all three documents related to the same occurrence involving Petitioner dropping heroin on the ground. (*Id.* at 70-71.) Officer Bromell also denied that he told the magistrate that the firearm offense occurred on October 15, 2008 and Officer Bromell further maintained that he had told the magistrate that the firearm offense occurred on October 16, 2008. (*Id.*)

In light of the above, the Court then found that:

[i]n this case, as is apparently customary, Officer Bromell took the warrant, signed his name in that box, and then passed – either passed the warrant back, but in any event did not review the warrant prior to signing his name.

. . . .

Officer Bromell, at most, was simply signing in verification that he was, in fact, the appearing officer and did not by his signature adopt or certify in any other way represent that all of the information contained in the warrant accurately reflected – accurately reflected the testimony that he had previously provided to the magistrate before the warrant was issued. For that reason, I find that the statements contained in the warrant are the statements of the magistrate and have not been adopted by the officer [and] I find that the foundation is insufficient to permit examination or further questioning by Officer Bromell about the date October 15, 2008, that appears within the warrant.

(*Id.* at 74-75.)

## Petitioner's Claims

Petitioner's Motion raises twelve claims. Grounds One through Three and Ground Six assert ineffective assistance of trial counsel. (Docket Entry 49, Grounds One, Two, Three and Six.) Ground Four alleges that Petitioner was unlawfully detained. (*Id.*, Ground Four.) Ground Five asserts that the indictment was obtained fraudulently. (*Id.*, Ground Five.) Petitioner asserts prosecutorial misconduct in Grounds Seven, Ten, Eleven, and Twelve. (*Id.*, Grounds Seven and Ten through Twelve.) Petitioner raises a claim of judicial misconduct in Ground Eight. (*Id.*, Ground Eight.) Last, Petitioner contends that he received an unfair trial in Ground Nine. (*Id.*) As explained, none of these claims has merit.

## Discussion

### Grounds One Through Three and Ground Six

Petitioner's first set of claims involve allegations of ineffective assistance of counsel. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668, 691-92 (1984). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 232-33 (4th Cir. 1994). To establish prejudice, a petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. Here, Petitioner has met neither prong of *Strickland* for any of his claims.

In Ground One, Petitioner contends that counsel was ineffective for failing to object to Officer Bromell's testimony regarding the positioning of the firearm. (Docket Entry 49, Ground One; Docket Entry 50 at 3 ("[C]ounsel was ineffective for not objecting to officers['] statements after Officer Bromell['s] statement contradicted Officer Carsons' statement . . . because Officer Bromell['s] testimony placed the firearm on movants left side, and Officer Carson placed it in the center of movants pants.".) In essence, Petitioner contends that Officer Bromell's testimony regarding this issue was contradicted by Officer Carson's testimony. However, Petitioner's trial counsel did not perform in a deficient manner when he did not object to the Government's evidence. To the extent there were minor inconsistencies between the testimony of the two officers, there is no reason to

8

believe any further inquiry or objection on the part of counsel would have somehow benefitted Petitioner. In fact, such an objection or further inquiry could very well have harmed Petitioner by providing the witnesses an opportunity to resolve any inconsistencies. This claim fails.

In Ground Two Petitioner claims that trial counsel "failed to file a motion to suppress the evidence after finding out that the warrants were fraudulent." (Docket Entry 50 at 5.) Petitioner offers nothing to meaningfully substantiate this claim. Based on the evidence presented at trial, Officer Bromell clearly had reasonable suspicion to stop Petitioner (who was holding marijuana in his hand) and probable cause to arrest him (he discarded a plastic bag of what appeared to be a controlled substance and was carrying a concealed handgun in his waistband). *See United States v. Sokolow*, 490 U.S. 1, 7 (1989) ("'[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The evidence recovered during the encounter (the heroin and handgun) was seized prior to and irrespective of the warrant subsequently obtained from a Durham County magistrate. While, as explained above, one of the state warrants was dated October 15, 2008 and the others were dated October 16, 2008, this hardly warrants a motion to suppress, nor does it provide any reason to believe that any such motion had any likelihood of being granted. Nor does the fact that Officer Bromell did not review the state magistrate judge's warrant for accuracy provide any such justification. Petitioner has failed to demonstrate any likelihood that a motion to suppress was warranted

or any likelihood that it would have been granted had it indeed been filed. For these reasons, Petitioner's claims related to the Fourth Amendment fail.

In Ground Three Petitioner asserts that counsel was constitutionally ineffective because he did not "object to the charge of 924(c)(1)(a) where active employment is required to sustain [a] conviction under 18 U.S.C. 924(c)(1)(a)." (Docket Entry 49, Ground Three.) This claim fails for at least two reasons. As an initial matter, the "active employment" criteria Petitioner mentions is no longer relevant. In *Bailey v. United States*, the Supreme Court held that Section § 924(c)(1)'s "use" prong requires the Government to show "active employment of the firearm." 516 U.S. 137, 143 (1995). In the wake of the *Bailey* decision, however, Congress amended § 924(c) to criminalize the "possession" of a firearm "in furtherance of" a drug trafficking offense. *United States v. Lomax*, 293 F.3d 701, 703-04 (4th Cir. 2002). Thus, "whether or not Petitioner 'actively employed' the firearm is entirely irrelevant." *Robinson v. United States*, No. 6:93–cr–00232–GRA–1, 2012 WL 6968497, *3 (D.S.C. Feb. 28, 2012.) Additionally, at the close of the Government's evidence and again after the close of all of the evidence, defense counsel made a Motion for a Judgment of Acquittal, pursuant to Rule 29 of Federal Rules of Criminal Procedure. (Docket Entries 41 at 165 and 43 at 100.) Consequently, Petitioner's contention that defense counsel should have "objected" to the charge fails for this additional reason. Defense counsel's motions, though denied, were properly raised pursuant to Rule 29.

In Ground Six, Petitioner again argues that counsel was ineffective for failing to file a motion to suppress and claims he was arrested "without reasonable suspicion, or probable

cause . . . ." (Docket Entry 49, Ground Six.) However, Petitioner's own testimony at trial, recited at length above, that he was holding marijuana in his hand while standing near a drug deal as Officer Bromell arrived, defeats this claim. As explained earlier, there is no reason to believe that even had a motion to suppress been filed, there is any likelihood it would have been granted. Petitioner has failed to meet either prong of *Strickland* for any of his ineffective assistance of counsel claims. They should therefore all be denied.

### Ground Four

Petitioner next alleges that his Fifth Amendment rights were violated, presumably by the State of North Carolina, because he was held in state custody after his state charges were dismissed. (Docket Entry 49, Ground Five.) This claim lacks merit.

Specifically, the Government contends that this is factually inaccurate and in support attaches to its Response printouts (Docket Entry 55, Attach) indicating that Petitioner was arrested by the Durham Police Department on October 16, 2008, (*id.*). The printouts further support the conclusion that Petitioner remained in state custody until those charges were dismissed on December 18, 2008, in lieu of the instant federal indictment, which was returned on December 15, 2008. (*Id.*; Docket Entry 1.) On December 16, 2008, a federal arrest warrant was issued for the Petitioner. (Docket Entry 2.) A federal detainer was obtained on December 18, 2008, and Petitioner was served with the federal arrest warrant on December 18, 2008. (Docket Entries 4 and 7; 12/18/2008 Minute Entry.) The Government moved for detention and a hearing was held on December 23, 2008. (Docket Entry 3;

12/23/2008 Minute Entry). After hearing evidence, the Court ordered that Petitioner be detained. (Docket Entry 9.)

In short, Petitioner was properly indicted and detained here. He was brought into federal custody on December 18, 2008, and after an evidentiary hearing, he was ordered detained pursuant to 18 U.S.C. § 3142. He has failed to demonstrate any likelihood of anything unlawful about his arrest and subsequent detention for the instant offenses. Finally, even if Petitioner were detained unlawfully by state law enforcement (which he has not demonstrated), Petitioner has failed to meaningfully explain why that would entitle him any relief in this instant federal action. For all these reasons, Petitioner's claim fails.

### Ground Five

In Ground Five, Petitioner alleges that the federal indictment was "obtained through fraudulent warrant's which were clearly used to mislead [the] Grand Jury in to believing that there was reasonable suspicion and probable cause to believe that movant possessed with the intent to distribute approximately 2 grams of heroien [sic], and possessed a firearm while in furtherance of a drug traffic crime." (Docket Entry 49, Ground Five.) Basically, Petitioner contends that the state court warrants issued as to the state charges (ultimately dismissed) arising from the facts mentioned above, were "fraudulent warrants" and that these warrants were presented to the grand jury in this federal matter. This claim fails.

Petitioner's assertion is vague, conclusory, and unsupported, and fails for these reasons alone. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain relief, or an evidentiary hearing, a habeas Petitioner must come forward with some evidence

that the claim might have merit), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). Moreover, as demonstrated above, Petitioner was convicted by a jury based on the testimony of Officers' Bromell and Carson, along with the Government's exhibits, and the agreed upon stipulations; not based on arrest warrants. Likewise, as explained above, there is no reason to believe there were any fraudulently issued state court warrants. Nor is there any reason to believe that the allegedly false warrants were submitted to the grand jury. The evidence here also suggests that there was, at most, a typographical error regarding the offense commission date on one of the three state court warrants. In any event, Petitioner has failed to meet his burden on this claim. These contentions lack merit.

## Grounds Seven, Ten, Eleven, and Twelve

In Grounds Seven, and Ten through Twelve, Petitioner alleges variations of prosecutorial misconduct. To prove prosecutorial misconduct, "a defendant bears the burden of showing (1) that the prosecutors engaged in improper conduct, and (2) that such conduct prejudiced the defendant's substantial rights so as to deny the defendant a fair trial." *United States v. Alerre*, 430 F.3d 681, 689 (4th Cir. 2005). None of these claims has merit.

Ground Seven alleges that the Government improperly revealed to the jury Petitioner's prior felony convictions. (Docket Entry 49, Ground Seven.) This is not the case. It was Petitioner himself who revealed his prior felony convictions to the jury when he chose to testify at trial. (Docket Entry 41 at 167-168.) On direct examination Petitioner testified that he "was in trouble for a robbery [with a] dangerous weapon and common law robbery at 15." (*Id.* at 169.) Petitioner stated further that "[i]n 2000, I got into some more

trouble with another -- with a possession of a firearm by felon, and it was a possession Schedule II, and it charged out, and two charges after that." (*Id.* at 170.) While the Government did ask questions, pursuant to Fed. Rule of Evid. 609, (Docket Entry 43 at 28-68), related to Petitioner's criminal history, it was Petitioner who revealed these convictions on direct examination.

In Ground Ten, Petitioner contends the Government "presented *false* warrants to the Grand Jury[.]" (Docket Entry 50 at 15.) Petitioner also contends that the Court "without consulting the defendant provided further instruction to the jury which the jury then relied on in convicting the defendant." (*Id.*) Petitioner also asserts that the presiding judge and the Government "[c]onspired jointly to convict an innocent Man such as [Petitioner]." (*Id.* at 16.) As explained, there is no reason to believe there were any "false warrants" in this case and, in fact, there is no reason to believe that any state court warrants, false or not, were presented to the grand jury. This claim—and all of its permutations—fail for being vague, conclusory, and unsupported. *See Nickerson*, 971 F.2d at 1136.

Petitioner observes further in this ground that he was indicted for possessing with the intent to distribute 2.0 grams of heroin, but the Government only presented "zero point five grams of heroin on the public courtroom floor as evidence against the movant." (Docket Entry 50 at 15.) During jury deliberations the jury asked the Court which was "accurate," the indictment alleging that Petitioner had possessed with the intent to distribute 2 grams of heroin or the stipulation between the parties that the substance recovered by the officers was .5 grams of heroin. (Docket Entry 43 at 124.) Petitioner claims that in response to this

14

question, the Court instructed the jurors to "find the movant guilty of what is in the indictment." (Docket Entry 50 at 16.) However, this is not so. In response to the juror's question, the Court instructed the Jury that:

> The indictment against the defendant is not evidence. It is your duty to determine the facts, and in so doing you must consider only the evidence that I have admitted in the case. That term "evidence" includes the sworn testimony of the witnesses, the exhibits admitted in the record, and any stipulations.

(Docket Entry 43 at 127.) The jury ultimately convicted Petitioner of possessing with the intention of distributing .5 grams of heroin. (Docket Entry 24.) Petitioner is therefore incorrect on this issue.

Ground Eleven alleges that the Government introduced Petitioner's "coerced statement" taken by Officer Carson at trial. (Docket Entry 50 at 17.) At trial, the Government introduced Petitioner's signed *Miranda* waiver and handwritten statement. (Docket Entry 41 at 27-31.) The Government further introduced as evidence a questionnaire in which Petitioner answered law enforcement's questions regarding the gun that he possessed. (*Id.* at 132-135.) There is no meaningful evidence suggesting Petitioner's statement and his answers to the gun questionnaire were coerced. In fact, Petitioner signed his name to the *Miranda* waiver and statement, in addition to placing his initials after each response in the questionnaire. Petitioner's Eleventh Ground for relief lacks any merit.[2]

---

[2] If Petitioner is attempting to attack the sufficiency of the evidence here, this claim fails as well. As set forth in the factual background described above, there is ample evidence here to support Petitioner's convictions.

Ground Twelve alleges that the Government "knowingly used false and perjur[ed] testimony and warrant" to earn a conviction. (Petitioner's Motion at 18.) Petitioner appears to assert that Officer Bromell testified falsely about state court warrants for arrest and that he and Officer Carson testified falsely about where the firearm was found, because the former said it was on Petitioner's left side, while the latter said it was tucked in the center of Petitioner's pants. (Docket Entry 50 at 18.) Petitioner has provided no meaningful support that any of these statements amount to perjury. Moreover, the jury heard all of the evidence and, presumably, found the Government's witnesses credible. Petitioner has failed to demonstrate any likelihood that this claim has merit.

## Ground Eight

In Ground Eight, Petitioner alleges "Judicial Abuse" stemming from the Court's questioning of Officer Bromell when the officer was on the witness stand. (Docket Entry 49, Ground Eight.) Petitioner is apparently relying on the *voir dire* of Officer Bromell regarding the state court warrants that took place outside the presence of the jury and which is described in considerable detail above. Petitioner argues the Court's questioning of the Officer required the presiding judge to recuse himself from the trial. (Docket Entry 50 at 13.)

28 U.S.C. § 455 governs the disqualification of federal judges. Under § 455(a) a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Subsection (b) provides a list of disqualifying grounds; including (1) "personal bias of prejudice" against a party. (*Id.* at § 455(b).) Here,

Petitioner fails to demonstrate how the presiding judge, in questioning Officer Bromell, lost his impartiality or was somehow biased against Petitioner. Moreover, a review of the trial transcript—which is summarized in detail above—belies any suggestion that the presiding judge was biased against Petitioner.

## Ground Nine

Finally, in Ground Nine, Petitioner alleges that he was denied a "Fair and Impartial Trail [sic]." (Docket Entry 49 at 14.) Petitioner does not state specifically how he was denied a fair trial; rather, he seems to rely on the other eleven grounds listed as a basis for a new trial. Consequently, this claim should be denied as vague, conclusory, and unsupported. *See Nickerson*, 971 F.2d at 1136.

## Conclusion

For the reasons set forth above, Petitioner's Motion (Docket Entry 49) should be denied and this case should be dismissed. This matter does not warrant an evidentiary hearing.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence (Docket Entry 49) be **DENIED** and that this action be dismissed.

Joe L. Webster
United States Magistrate Judge

December 1, 2014
Durham, North Carolina